UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD LACY, | ) | |
| | ) | |
| Petitioner, | ) | 17 C 7296 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| MATTHEW SWALLS, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Reginald Lacy (which is how he spells his last name, although Illinois court documents spell it "Lacey"), an Illinois prisoner, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 6. He was convicted in 2012 of burglary and sentenced to eighteen years' imprisonment. Lacy's petition asserts that: (1) his Fourth Amendment rights were violated when he was arrested pursuant to an invalid "investigative alert"; and (2) his Fourteenth Amendment due process rights were violated when he was convicted on the basis of insufficient evidence. The habeas petition is denied, and the court declines to issue a certificate of appealability.

**Background**

Following is the evidence introduced at Lacy's bench trial, as described by the Appellate Court of Illinois. *People v. Lacey*, 2014 IL App (1st) 123291-U, 2014 WL 4413491 (Ill. App. Sept. 8, 2014).

At some point after 8:00 p.m. on April 29, 2011, the Calvary Baptist Church, including the pastor's office, was burglarized. *Id*. at ¶ 3. Fingerprints lifted from the pastor's desk led to Lacy's arrest some six months later. *Ibid*.

1

At trial, Tommy Wright, the church's custodian and trustee, testified that he was responsible for cleaning the offices in the old and new church buildings, including the pastor's office on the new building's second floor. *Id*. at ¶ 4. The office had a desk with a glass top, chairs, bookshelves, and a flat screen television set. *Ibid*. Wright testified that he last cleaned the desk top with Windex and paper towels on April 28, but later stated that he did so on April 29. *Ibid*. Wright further testified that when he left the church at 8:00 p.m. on April 29, there were still people in the basement for a youth program, and he told the janitor to lock up. *Ibid*.

When Wright entered the church the next morning, he noticed "a lot of stuff" on the floor. *Id*. at ¶ 5. There were no signs of forced entry in the old building, but Wright found equipment missing from the sound room and frames torn out of the basement doors leading to the finance room. *Ibid*. In the new building, the doors leading to the roof and the janitorial supplies room, and the locks to the pastor's and the superintendent's offices, were broken. *Ibid*. Upon entering the pastor's office, Wright noticed that the television set was missing and that there were fingerprints all over the desk's glass top. *Ibid*. Wright recalled that the fingerprints were not there when he cleaned the desk the previous day. *Ibid*. The parties stipulated that the fingerprints matched Lacy's. *Id*. at ¶ 7. A counting machine from the finance office and some cash from the secretary's file cabinet were missing as well. *Id*. at ¶ 5. Wright denied that he or anyone else in the church permitted anyone to remove those items from the building. *Ibid*.

Reverend James Ray Flint, Jr., the church's pastor, testified that he was in his office earlier in the day on April 29 and that he locked his door when he left. *Id*. at ¶ 8. Reverend Flint testified that he did not give anyone other than his custodian permission to enter his office and that no one else was allowed to use it for conferences. *Ibid*. He further testified that he did not know Lacy, had never seen him in the church or had a meeting with him, and had not given him

permission to enter his office. *Ibid*. On cross-examination, Reverend Flint testified that he brought individuals into his office only for scheduled appointments. *Ibid*.

Lacy testified in his own defense. *Id*. at ¶ 9. He acknowledged his prior convictions for burglary, stealing a car, and drug possession, but maintained that he was innocent of the church burglary. *Ibid*. Lacy testified that he was released from prison on April 22, 2011, and went to the church in his neighborhood around 11:00 a.m. on April 29 to seek help. *Ibid*. Lacy entered the new building and asked a woman coming out of the daycare where he could find someone to speak with, and she directed him upstairs to the business office. *Ibid*. Lacy walked up to the first open door he saw. A man in the office asked how he could help, and Lacy explained that he did not have any money, food, or clothes. *Ibid*. Lacy testified that the man in the office was dark, tall, bald, and did not look like the pastor. *Ibid*. They conversed for five to fifteen minutes, while Lacy sat in a chair in front of the desk. *Ibid*. At the end of the conversation, Lacy and the man stood at the side of the desk and the man put a hand over Lacy's head and prayed over him. *Ibid*. Lacy did not recall whether or not he touched the desk, but he acknowledged the possibility of his doing so while denying that he touched any item on the desk. *Ibid*. He then left the church and never returned, and stated that he would not burglarize a church because it was not moral. *Ibid*.

The court found Lacy guilty of burglary. *Id*. at ¶ 10. Lacy appealed, arguing that the evidence was insufficient to sustain a conviction. The Appellate Court of Illinois affirmed the conviction, *id*. at ¶ 28, and the Supreme Court of Illinois denied leave to appeal, *People v. Lacey*, 21 N.E.3d 716 (Table) (Ill. 2014).

**Discussion**

Lacy's Fourth Amendment claim can be dispatched quickly. For one, Lacy argues only that his arrest was illegal, not that any illegally acquired evidence was used against him at trial. Doc. 6 at 5; Doc. 13 at 5-8. Second, even if Lacy had raised a genuine exclusionary rule argument, he would not be entitled to habeas relief because he has not alleged, let alone shown, that the state court denied him a fair hearing on any Fourth Amendment claim. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *Monroe v. Davis*, 712 F.3d 1106, 1113 (7th Cir. 2013) ("Relief on a Fourth Amendment claim thus requires a habeas petitioner to show two things: (1) that the state court denied him a full and fair hearing on his claim, and (2) that the claim was meritorious.").

That leaves Lacy's insufficient evidence claim. "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (one citation omitted). Lacy does not dispute any of the facts upon which the state appellate court relied in rejecting his insufficient evidence argument, so the court will consider his petition under § 2254(d)(1) alone.

A state court's decision is "contrary to" clearly established federal law within the meaning of § 2254(d)(1) "if the state court applies a rule different from the governing law set

forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 101 (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Ibid.* (internal quotation marks omitted).

"The relevant decision for purposes of [the court's] assessment is the decision of the last state court to rule on the merits of the petitioner's claim[.]" *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). The last state court decision to rule on the merits of Lacy's insufficient evidence claim was the state appellate court's opinion on direct appeal.

Far from "appl[ying] a rule different from the governing law set forth in [Supreme Court] cases," *Cone*, 535 U.S. at 694, the appellate court correctly identified the governing rule for an insufficient evidence claim, as stated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Lacey*, 2014 IL App (1st) 123291-U, at ¶ 16 (citing *People v. Collins*, 478 N.E.2d 267, 277 (Ill. 1985), which in turn cites *Jackson*). That rule provides that an insufficient evidence claim fails if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The appellate court applied the *Jackson* rule and concluded: "The evidence

5

presented in this case showed that the office where the prints were found had been broken into, and defendant's prints were impressed on a desktop in the immediate vicinity of the stolen television set. The evidence further showed that defendant was not authorized to enter the office, and the glass surface of the desk where his prints were found was cleaned the night before. Taken together, these circumstances were sufficient for the trial court to conclude that defendant's fingerprints were made on the pastor's desk at the time he committed the offense." *Lacey*, 2014 IL App (1st) 123291-U, at ¶ 18.

Lacy argues that the prosecution presented no evidence that he entered the church with the intent to steal. Doc. 13 at 2-3. The appellate court considered that argument and concluded: "The State, however, was not required to present direct evidence to prove unlawful intent, and here, the same circumstances that indicated that defendant committed a burglary—his fingerprints on a previously cleaned desktop, the broken office door, the missing television set, and his lack of authorization to enter the pastor's private office—are equally persuasive to infer defendant's intent to commit a theft inside the church." *Lacey*, 2014 IL App (1st) 123291-U, at ¶ 21. A "fairminded jurist" could easily agree with the appellate court's resolution of Lacy's insufficient evidence claim, and so § 2254(d)(1) precludes this court from disturbing it on habeas review.

**Conclusion**

For the foregoing reasons, Lacy's petition for a writ of habeas corpus is denied. Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Regarding Lacy's claims, the applicable standard is:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that …

> includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Lavin*, 641 F.3d at 832.

This court's denial of Lacy's habeas claims relies on settled precedents and principles. The application of those precedents and principles to Lacy's petition does not present difficult or close questions, and so the petition does not meet the applicable standard for granting a certificate of appealability. The court therefore denies a certificate of appealability.

May 23, 2018

_____
United States District Judge